IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:09-mj-0048 CMK |
| Plaintiff, | ORDER |
| v. | |
| Brian Ganoe, Donald McKay, and Mac McFarlin, | |
| Defendants. | |
| _____ / | |

    The Defendants' Motion to Dismiss the Information [Doc. 9] and Supplemental Authority in Support of Motion to Dismiss (Raising Denial of Speedy Trial) [Doc. 16] came on regularly for hearing on November 19, 2009, before the Honorable Craig M. Kellison, United States Magistrate Judge, at the United States District Court, 2986 Bechelli Lane, Redding, California.  Defendants appeared by counsel David Young, and Matthew Stegman, Assistant United States Attorney, appeared telephonically on behalf of the United States of America [Government].

    This action stems from the alleged activities by defendants on the Klamath National Forest during the years 2007 and 2008.  The government claims that the defendants' acts included causing damage to a Forest Service Road and conducting various mining activities without a Plan of

1

Operations. These claims are summarized in the Information [Doc. 1]. By way of several affidavits and the arguments of counsel, defendants apparently dispute these allegations in total, or in part.[1]

On a motion to dismiss an information, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the information, if true, are sufficient to establish a violation of the charged offense. United States v. Sampson, 371 U.S. at 78-79 (1962). For the most part, this question does not involve any examination of the evidence. In vary rare circumstances the court may dismiss charges at the pretrial stage where the operative facts are *undisputed* and the government fails to object to the court's consideration of those undisputed facts in making the determination regarding a submissible case. Pretrial dismissal based on undisputed facts is a determination that as a matter of law, the government is incapable of proving its case beyond a reasonable doubt. Dismissal in this manner is the rare exception, not the rule. Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the defendant could not have committed the offense for which he was charged. In the present cases, each of the eight counts of the Information are plead adequately, and in most instances the exact wording of the Part 261 Code of Federal Regulation section charged is utilized.

Defendants are apparently under the impression that this case can be resolved by the submission by the defendants of various affidavits which drift in theme between their confusion of the need for a Plan of Operations [POO] and their malevolence of the government in choosing to pursue prosecutions for alleged resource violations. Thus, issues of whether the defendants (1) were

---

[1] In their motion to dismiss, defendants counsel states that "the defendants never cut a tree, excavated a wedge of bedrock, damaged or restricted a Forest Service Road, created a water pipeline, created a settling pond, or did any other thing to *significantly* change the surface conditions of their mining claim." [Doc. 9-6]. So the court is left with scenarios that (1) none of the events described were caused by some or all of the defendants; (2) that all of the events described were caused by some or all of the defendants, *but* did not result in significant surface disturbance, or (3) some of the events described were caused by some or all of the defendants, *but* did not result in significant surface disturbance. Counts I through 4 allege violations that involve resource damage to National Forest System lands which do not turn on the "significant disturbance" standard as suggested by the defendants. Mentioning this is only important in the context that in certain situations as discussed below where the facts are undisputed the court may be in a position to grant a motion to dismiss as a matter of law. This, however, would not apply to the present case, since virtually all facts appear to be in dispute.

1   "[mining] operators (36 C.F.R. 228.3(b)); (2) possessed a valid "mining claim" during the period in
2   question (36 C.F.R. 228.(d)); (3) were required to file a Notice of Intent or Plan of Operations (36
3   C.F.R. 228.4(a)); or (4) damaged or "significantly" damaged surface resources of the United States
4   are issues to be tried before the court.  The parties are free to pursue joint stipulations of facts or
5   issues.

6         The defendants each enjoy the privilege of declining to testify at time of trial.  Of course, if
7   any defendant chooses to testify, then the government is entitled to cross- examine.  If the defendant
8   in a criminal prosecution voluntarily testifies in his or her own behalf, the defendant thereby subjects
9   himself to cross-examination.  Powers v. United States, 223 U.S. 303, 32 S. Ct. 281, 56 L. Ed. 448
10  (1912);  United States v. Miranda-Uriarte, 649 F. 2d 1345 (9th Cir. 1981).   Emphasizing these
11  basic notions is important here since defendants appear intent on providing this court with a myriad
12  of affidavits and documentation pretrial apparently to support their claim that this prosecution is
13  somehow just one big mistake or an intrusion on their personal liberties.  Of course these are
14  conclusions that the court could reach following trial, but certainly defendants must understand that
15  if they wish to offer their version of the events by way of testimony or affidavits that the government
16  would have the right to cross examine.

17        Since the court declines to resolve this case solely on the statements set forth in the
18  defendants' affidavits, the court is left with several arguments in support of their Motion to Dismiss.

19      1. The defendants as miners cannot be prosecuted under § 261 of Title 36  C.F.R.
20      2. The purpose of the prosecution of the defendants is to coerce civil restitution.
21      3. The prosecution is selective, and therefore in violation of the defendants' equal protection
22         rights.
23      4. The prosecution in this case is vindictive, and therefore in violation of the defendants'
24         due process rights.
25      5. The involvement of a Forest Service Law Enforcement Officer produces a "fatal flaw"
26         in the case.

§ 228.7 "NOTICE TO CURE".

Defendants suggest that the court should dismiss the Information because the United States cannot prosecute their unlawful actions under 36 C.F.R. 261 [Part 261]without first being allowed to "cure" the violation under 36 C.F.R. 228.7.  Defendants argue that under § 228.7 they must be allowed to remedy or cure the alleged wrongful activity before the government can prosecute the defendants under 36 C.F.R. Part 261.  In other words, Defendants apparently argue that the regulation of mining operations on NFS lands is solely limited to regulation under the Forest Service's surface use regulations.[2]

Defendants do not offer any legal authority to support their argument.  Defendants' argument was specifically rejected in United States v. Doremus, 888 F.2d at 632 (9th Cir. 1989).  In *Doremus*, the defendants argued that miners were exempt from criminal prosecution under Part 261.  Id.  The Ninth Circuit rejected the argument that the Forest Service's regulation of mining operations is limited to regulation under the Forest Service's surface use regulations, finding that (a) the references to operating plans in § 262.10 would be meaningless unless Part 261 were construed to apply to mining operations, and (b) 16 U.S.C. § 478 requires that persons prospecting, locating, and developing the mineral resources on National Forest System lands must comply with all rules and regulations and "not just those (such as Part 228) which apply exclusively to mining claimants." Id.

Even if the court was convinced that a § 228.7  "notice to cure" was a prerequisite to initiating a Part 261 prosecution, such opportunity to cure would be meaningless in situations where the alleged violation is impossible, or impractical, to cure (i.e., changing the course of a stream, constructing a new road, etc.), or in situations where the violation itself *is* the failure to obtain a Plan of Operations.  In the latter case, the offending miner could simply abandon efforts or decline to

---

[2] During oral argument the court asked defendants' counsel that based on his argument that Part 261 prosecution was improper in this case , whether he believed that there existed  any possible scenario where a  "notice to cure" prior to prosecution would not be required.  Counsel suggested that only under the  most egregious of circumstances. Assuming, arguendo, that this "egregious" standard should be the predicate to prosecution, why shouldn't the government in this case be permitted to argue that the defendants' alleged use of  mechanical equipment on their mining claim without filing a Notice of Intent  or Plan of Operations which allegedly resulted in considerable damage to a Forest Service road and surface vegetation be considered egregious.

1  pursue obtaining a Plan of Operations without notifying the Forest Service.  Would the defendants
2  then suggest that the government be then required to wait a certain period of time before initiating
3  a Part 261 prosecution?
4  　　　　　None of the cases cited by defendants are relevant to this case or support defendants'
5  argument that the Forest Service's regulation of mining operations is limited to the Part 228
6  regulations.  Since the counts in the Information are for unlawful conduct committed between 2007
7  and the fall of 2008, defendants are charged under the regulations in effect at the time of conduct,
8  that is, not under the December 2008 amendments.  More importantly, however, defendants are not
9  being charged under 36 C.F.R. § 261.10(c) (which was amended in the 2008 amendments) in the
10 Information.  Therefore, defendants reliance United States v. McClure, 364 F. Supp. 2d 1183 (E.D.
11 Cal. 2005) and United States v. Hicks, 2009 WL-256419 (D.Mont.) is misplaced.  The *McClure*
12 case involved a citation under 36 C.F.R. § 261.10(c), which at that time did not include the term
13 "Plan of Operations."  The court rejected the government's argument that the term "special use
14 authorization" included "Plan of Operations."  The *McClure* decision was a primary reason for the
15 U.S. Department's 2009 amendment of the 36 C.F.R. § 261 regulations, specifically, 36 C.F.R. §
16 261.(c) to specifically include the term "plan of operations."  In addition to having no binding effect
17 on this court, *Hicks*, similarly, is not relevant to the issues at hand.  The defendant in *Hicks* was also
18 charged under 36 C.F.R. § 261.10(c) in 2008 under the same version of 261.10(c) as in *McClure*, that
19 is, prior to the 2009 amendment of 36 C.F.R. § 261.10(c).  Additionally, in *Hicks*, the defendant was
20 charged with violating 36 C.F.R. § 261.10(c) for conducting educational, recreational, or tourist
21 activities or services without a special use permit under the special use permit regulations, 36 C.F.R.
22 Part 251, Subpart B.  The court found that the activities involved mining-related operations, and
23 therefore, not chargeable under the special use regulations.  Neither decision held that the Forest
24 Service's enforcement of mining operations was limited to the Part 228 regulations.  To do so, would
25 be in conflict with the Ninth Circuit's decision in *Doremus*.
26 　　　　　The defendants also suggest that the newly amended Forest Service Manual [Manual]
27
28　　　　　　　　　　　　　　　　　　　　　　5

precludes prosecution. The Manual, however, is policy- not law, and the preamble to the regulations has no legal effect. Until overruled or modified *Doremus* is still the law of the Circuit. In addition, defendants' reliance on statements made in response to written comments in the Manual preamble to the December 2008 amendments of Part 261 are without merit. The preamble specifically states, "[t]he Forest Service currently uses two enforcement options, civil and criminal, to enforce its mining regulations at 36 CFR part 228, subpart A." 73 FR 65984-01, 2008 WL 48088822 (F.R.). The preamble goes on to state, "[g]iven the *McClure* decision, this Department believes it is again advisable to amend 36 CFR part 261, subpart A to clearly provide that conducting unauthorized locatable mineral operations subject to 36 CFR part 228, subpart A, or other unauthorized mineral operations subject to different subparts of 36 CFR part 228, is prohibited by 36 CFR part 261, subpart A and may lead to the operator's criminal prosecution. The amendments to 36 CFR part 261, subpart A rely on the Forest Service's clear statutory authority to adopt regulations providing for the issuance of a criminal citation to persons who commit prohibited acts on NFS lands." Id.

During oral argument, defendants were invited to submit supplemental points and authorities supporting their position that the amendments and comments to the Manual should be considered retroactively. No such authority was provided. Instead, however, defendants submitted further documentation apparently addressing the validity of their mining claim.[3]

### VINDICTIVE PROSECUTION.

In conjunction with defendants' argument that they were entitled to cure the alleged violations before criminal prosecution could commence is their claim that they are being treated differently from other noncomplying miners. Defendants claim that the former owners of their claims were allowed to mine without a Plan of Operations and without Forest Service scrutiny. The government denies these allegations. Again, the court will be required to resolve these conflicts at

---

[3] Defendants' most recent submissions concerning the existence and validity of their mining claims consist of 2007 recorded copies of the Payless Mining Claim containing the incorrect legal description. The incorrect legal description is crossed out and the apparently the correct legal description is handwritten in. The court has serious reservations of any evidentiary value these hand corrected documents would have.

1  time of trial, or by way of stipulation.

2        The government has broad discretion to initiate and conduct criminal prosecutions. <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996). Prosecutorial discretion is an "integral feature of the criminal justice system." <u>United States v. LaBonte</u>, 520 U.S. 751, 762 (1997). Additionally, prosecutorial decisions are "particularly ill-suited to judicial review." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985); <u>Newton v. Rumery</u>, 480 U.S. 386 (1987). Although prosecutorial discretion is broad, it is not unlimited. Prosecutors may not engage in selective prosecution, which denies equal protection of the laws, or vindictive prosecution, which denies due process rights. <u>Wayte</u>, 470 U.S. at 608; <u>Blackledge v. Perry</u>, 417 U.S. 21, 28-29 (1974).

      To support their wrongful prosecution claims, defendants rely solely upon hearsay declarations. The defendants have not shown an improper prosecutorial motive or disparate treatment, therefore the prosecution of this case is not selective, and accordingly, not in violation of equal protection of the laws. In order to demonstrate selective prosecution, the defendants must show that they received disparate treatment and that the prosecution was improperly motivated. <u>Wayte</u>, 470 U.S. at 608-610.

      A defendant challenging a prosecution on selective prosecution grounds bears a heavy burden of proving facts sufficient to meet the elements. <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 489 (1999). The court finds no disparate treatment in this case, since the defendants have offered no credible evidence to support such an argument. The defendants have attempted to argue that the prior owners of the defendants' mining claims were not prosecuted for failing to obtain Plans of Operations.

      The court also finds no improper motive in this case. Improper motive exists only when the prosecution is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." <u>Wayte</u>, 470 U.S. at 608. The defendants have offered no evidence that the government has deliberately based its prosecution in this case on some "unjustifiable standard" or even on any classification at all.

To establish vindictive prosecution, a defendant must show either actual vindictiveness or facts sufficient to give rise to a rebuttable presumption of vindictiveness. United States v. Goodwin, 457 U.S. 368 (1982). A presumption arises only when the defendant is affirmatively exercising constitutional or statutory rights. Blackledge v. Perry, 417 U.S. 21 (1974); United States v. Jenkins, 504 F.3d 694 (9th Cir. 2007). In order to gain a presumption, the defendant must provide evidence indicating a realistic or reasonable likelihood of prosecutorial vindictiveness. United States v. Lopez, 474 F.3d 1208, 1211 (9th Cir. 2007). The situations in which a presumption of vindictiveness will arise are limited, and ordinarily do not arise pre-trial. See e.g. Goodwin, 457 U.S. at 381. A presumption of vindictiveness can be overcome by objective evidence that the prosecution was proper. Lopez, 474 F.3d at 1212. No actual evidence of vindictiveness has been shown by the defendants. Furthermore, no presumption of vindictiveness is warranted in this case because the defendants have not provided evidence indicating a realistic or reasonable likelihood of prosecutorial vindictiveness. Lopez, 474 F.3d at 1211. Any statutory rights that defendants may allege because their actions involved mining operations do not insulate them from criminal prosecution, if the conduct was in violation of law. See *Doremus*, supra.

### RULE 180 PROSECUTION.

Although the issue appears moot, defendants challenge the authority of a Klamath National Forest Law Enforcement Officer to try this case on behalf of the government.

The Local Rules of the District Court for the Eastern District of California authorizes the use of non-attorneys in the prosecution of petty offenses in certain cases. Local Rule 83-180. Although this case began by way of a Rule 180 prosecution, the Information was filed on August 3, 2009, by the United States Attorney. This Information superseded the Criminal Complaints filed by the Forest Service.

### SPEEDY TRIAL.

In defendants' Supplemental Authority, they allege that their right to a speedy trial has been violated. The Speedy Trial Act is not applicable to this case. The Speedy Trial Act is contained in

Chapter 208 of Title 18 of the United States Code, encompassing sections 3161-3174. Section 3161(b). Section 3172 defines "offense" as any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal). 18 U.S.C. § 3172(2) (emphasis added). In this case, the defendants are charged with Class B misdemeanors, therefore, the Speedy Trial Act is inapplicable in this case.

Although the Speedy Trial Act is inapplicable to this case, the defendants still retain a right to a speedy trial under the Sixth Amendment. The Supreme Court announced a four-factor test for determining whether a defendant's right to a speedy trial has been violated. Barker v. Wingo, 407 U.S. 514 (1972). The factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether, when, and how the defendant asserted his or her right to speedy trial; and (4) whether the defendant was prejudiced by the delay. Id. The first factor, the length of the delay, is a "triggering mechanism" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." Id. at 530. Therefore, to trigger a speedy trial analysis, the delay in question must be (1) presumptively prejudicial and (2) not a customary delay associated with a prosecution. Doggett v. United States, 505 U.S. 647, 651 (1992). Courts generally hold that a delay in excess of one year is presumptively prejudicial. Id. at 652; United States v. Lam, 251 F.3d 852, 856 (9th Cir. 2001)(Fourteen and a half month delay exceeded, but not greatly, the threshold needed to trigger examination of other Barker factors). However, the Supreme Court qualified this rule with the principle that a longer delay is more acceptable for complex trials and shorter trials should have a shorter delay. Barker, 407 U.S. at 531. The defendants failed to provide any authority or argument as to why an eight month interval between the filing of the original Complaint and the filing of a Superseding Information violates the defendants' right to a speedy trial, or why an eight month interval is presumptively prejudicial.

The defendants either requested or stipulated to at least four continuances of their initial appearance on the Criminal Complaints, covering a time period from February 27, 2009 through July

20, 2009. See, <u>United States v. Ganoe</u>, 3:09-mj-0001cmk. The defendants never made an initial appearance on the Criminal Complaints due to these continuances. On August 5, 2009, the defendants made an initial appearance, at which time a Superseding Information had already been filed by the United States Attorney's Office.[4]

Additionally, the original Complaint alleged the exact same offenses as the Information, therefore the defendants have had notice of the charges and suffered no prejudice due to the filing of the Information. Therefore, a large portion of the "delay" between the Criminal Complaints and the filing of the Superseding Information was due to the continuances requested by or stipulated to by the defendants. The defendants have offered no evidence as to why this would be considered presumptively prejudicial and have alleged no actual prejudice.

For these reasons defendants' Motion to Dismiss is denied.

Accordingly, IT IS HEREBY ORDERED that defendants' Motion to Dismiss the Information [Doc. 9] is denied.

DATED: December 4, 2009

*signature: Craig M. Kellison*

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

---

[4] The court also finds defendants' claim that they have been denied a speedy trial disingenuous. Defendants' counsel is reminded of this court's remarks during the initial appearance concerning setting the matter for trial. The court was concerned not only with avoiding future delays on the part of the defendants in advancing this matter to trial, but was also concerned with avoiding the needless expense of defendants and defendants' counsel in attending future court hearings solely related to trial setting. Offering the defendants an opportunity to plead not guilty and extending to them an ample opportunity to investigate the case was declined. Defendants then requested a seven week continuance of their arraignment which was granted.